# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

GERALD RONALD WATTS,                :
                                    :
            Plaintiff               :     No. 3:12-CV-00167
                                    :
      vs.                           :     (Judge Nealon)
                                    :
CAROLYN W. COLVIN, ACTING           :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
            Defendant               :

**MEMORANDUM**

**FILED**
**SCRANTON**

JUN 1 0 2013

PER _____ M. b. t
          DEPUTY CLERK

## BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Gerald Ronald Watts's claim for social security disability insurance benefits.

Watts protectively filed[1] his application for disability insurance benefits on January 7, 2010. Tr. 144-151 and 161.[2] The application was initially denied by the Bureau of Disability Determination on June 8, 2010.[3] Tr. 53 and 83-87. On June 17,

_____

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of the Answer on April 2, 2012.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security

(continued...)

2010, Watts requested a hearing before an administrative law judge. Tr. 53 and 90-91. After about 6 months had elapsed, a hearing was held before an administrative law judge on December 14, 2010. Tr. 65-82. At the administrative hearing, Watts and a vocational expert testified. Id. Watts was represented by counsel at the hearing. Id. On February 3, 2011, the administrative law judge issued a decision denying Watts's application. Tr. 53-61. On March 3, 2011, Watts filed a request for review with the Appeals Council, and after about 9 months had passed, the Appeals Council on December 20, 2011, concluded that there was no basis upon which to grant Watts's request for review. Tr. 1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Watts then filed a complaint in this court on January 27, 2012. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on June 8, 2012, when Watts elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled[5] and "insured," that is, the

_____

3.   (...continued)
Administration.   Tr. 84.

4.   Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."   M.D.Pa. Local Rule 83.40.1.

5.   To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful
                                                        (continued...)

2

individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Watts meets the insured status requirements of the Social Security Act through December 31, 2014. Tr. 53 and 154.

Watts, who was born in the United States on November 24, 1962,[6] graduated from high school in 1981 and can read, write,

---

5.   (...continued)
activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

6.   At the time of the administrative hearing and the administrative law judge's decision, Watts was 48 years of age and considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. § 404.1563(c).   The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18
(continued...)

3

speak and understand the English language and perform basic mathematical functions such as paying bills, counting change, handling a savings account and using a checkbook and money orders. Tr. 69, 73, 144-146, 167, 172-174. Watts testified at the administrative hearing that during his elementary and secondary schooling he attended special education classes because he was a slow learner. Tr. 73 and 174. After graduating from high school, Watts did not complete "any type of specialized job training, trade or vocational school." Tr. 175.

Watts has past relevant employment[7] as a fast food worker which was described by a vocational expert as unskilled, light work, and as a kitchen helper which was described as, unskilled, medium work.[8] Tr. 77.

---

6. (...continued)
through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

7. Past relevant employment in the present case means work performed by Watts during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

8. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(continued...)

The records of the Social Security Administration reveal that Watts had earnings in the years 1980 and 1987 through 2009. Tr. 155. Watts's annual earnings range from a low of $34.80 in 1980 to a high of $14,674.76 in 2005. Id. Watts's total earnings during those 24 years were $204,408.79. Id. Also, the record includes a document which reveals that in the years 2009 and 2010 Watts received unemployment compensation benefits. Tr. 152-153. Specifically, during the 3rd and 4th quarters of 2009, Watts received a total of $2671.00 in unemployment compensation benefits

---

8. (...continued)
　　　(b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

　　　(c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

　　　(d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

and \$1099.00 during the 1st quarter of 2010. Id. At the time of the administrative hearing, Watts testified that he was still receiving unemployment compensation benefits.[9] Tr. 67-68.

The record reveals that Watts had positions with Wendy's Old Fashioned Hamburgers of New York, Inc. (1995-1997); IHOP Restaurants, Inc. (1998); Valenti Mid-Atlantic Management, LLC (1997-1998);[10] Warwick Hotels, Inc. (1999-2008); Penn-Taco, Inc.(2008-2009); and Aarsand & Associates, Inc. (Aarsand)(2009).[11] Tr. 157-159. Watts worked as dishwasher for Warwick Hotels. Tr. 72. Watts's last position was as a "prep cook" for Taco Bell in December, 2009. Tr. 68 and 174. Watts testified at the administrative hearing that he worked for Taco Bell for 4 years and that he quit that job because of his physical impairments. Tr. 68. However, in documents filed with the Social Security Administration he stated that he "was falsely accused of taking a check and was terminated[.]" Tr. 174.

---

9. An individual can only collect unemployment compensation if the individual is able and willing to accept work. 43 P.S. §801(d)(1). The fact that Watts collected unemployment compensation after his alleged disability onset date of December 2, 2009, suggests that he represented when applying for such benefits that he was able and willing to accept employment.

10. Valenti Management operates Wendy's and Chili's Restaurants.

11. Aarsand operates several fast food restaurants, including Taco Bell.

Watts claims that he became disabled on December 2, 2009, because of both physical and mental problems. Tr. 144 and 173. The physical problems alleged were diabetes, carpal tunnel syndrome and high blood pressure. Id. The mental impairment alleged was depression. Id. When asked at the administrative hearing why he was unable to work, Watts stated that he has "trouble with diabetes" and he has "soreness and numbness" in his feet. Tr. 68-69. He further stated that he has "burning and pain" in his feet and that he has had ulcers on his feet twice in the past year. Tr. 73-75. Watts also claimed that he has numbness and tingling in his hands. Tr. 75.

In a document filed with the Social Security Administration in 2010, Watts admitted that has not seen or received treatment from a health care professional for any mental health condition. Tr. 177. At the administrative hearing, Watts testified that he had no problems with concentration and that he did not suffer from any medication side effects. Tr. 76.

In a "Function Report - Adult" dated February 25, 2010, Watts indicated that he performed a range of daily activities. Tr. 164-171. Watts lives in a house by himself. Tr. 164. Watts stated that he has no problem with personal care, such as dressing, bathing, caring for his hair, shaving and feeding himself. Tr. 165. In addition, Watts prepares simple as well as "complete" meals daily and performs cleaning and laundry without having to be encouraged to do so. Tr. 166. Watts goes out "all

7

the time" and is able to walk, drive a car and ride in a car. Tr. 167. Watts can go out alone. Id. Watts shops in stores for groceries, cat food, clothing, and laundry supplies. Id. Watts stated that his hobbies are cross word puzzles, listening to music and watching TV. Tr. 168. Watts goes out with friends to movies and attends church. Tr. 168. He needs no reminders to go places. Id. In the "Function Report," Watts, when asked to check items which his "illnesses, injuries, or conditions affect", did not check squatting, standing, reaching, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, concentration, completing tasks, understanding, following instructions, using hands and getting along with others. Tr. 169. Watts stated that he could lift 75 pounds and walk for 2 hours. Id. Watts does not use an assistive device such as a cane or walker to ambulate. Tr. 170. Watts indicated he was left-handed. Tr. 169.

In March of 2010, Ralph Sanchez, a friend of Watts, completed a similar function report in which he stated, inter alia, that Watts was right-handed. Tr. 182-189. Sanchez noted that Watts takes care of a cat and had no problems with personal care. Tr. 183. Sanchez noted that Watts prepares "frozen dinners, cooks lasagna, hamburgers, etc." and does cleaning, laundry and mowing. Tr. 184. In contrast to Watts's statement that he goes outside all the time and spends time with others, Sanchez stated Watts does "not often" go outside and does not spend time with others. Tr. 185. Sanchez indicated that Watts shops in stores and

8

is able to drive. Id. In the "Function Report," Sanchez when asked to check items which Watts's "illnesses, injuries, or conditions affect" did not check bending, reaching, sitting, talking, hearing, seeing, memory, completing tasks, concentration, understanding and using his hands. Tr. 187.

Watts has not worked since December, 2009.

For the reasons set forth below we will affirm the decision of the Commissioner denying Watts's application for disability insurance benefits.

## STANDARD OF REVIEW AND SEQUENTIAL EVALUATION PROCESS

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with the five-step sequential evaluation process that the Commissioner utilizes and the substantial evidence standard of review.[12]

---

12. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

(continued...)

## MEDICAL RECORDS

Before the Court addresses the administrative law judge's decision and the arguments of counsel, some of Watts's medical records will be reviewed.

As stated above, Watts's alleged disability onset date is December 2, 2009, and the date of the ALJ's decision was February 3, 2011. Consequently, the Court will primarily focus on medical treatment received during that time frame.

The medical records reveal that Watts suffers from diabetes and at times that condition was not well-controlled. On a number of occasions Watts suffered from ulcers and secondary

---

12. (...continued)
Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).
The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.

infections on his feet. Tr. 214-216 and 321-342. Watts's history of diabetes and associated symptoms including ulcers goes back several years prior to his alleged disability onset date of December 2, 2009. Tr. 220 and 258-261.

On December 2, 2009, Watts had an appointment regarding his diabetes with John F. Barnoski, M.D., at Pinnacle Health Family Care, in Middletown, Pennsylvania. Tr. 212-213. On that date, Watts had a "sore area [on his left] leg. Tr. 212. However, other than that "sore area" Dr. Barnoski's review of Watts's systems[13] did not reveal any other complaints and the results of a physical examination were essentially normal. Id. Watts had no "bone/joint symptoms" or "weakness." Id. Watts's blood pressure at the appointment was 116/58. Id. Dr. Barnoski's assessment was that Watts suffered from benign hypertension, high cholesterol, controlled diabetes and an abscess on the left leg. Tr. 213. Dr. Barnoski prescribed several medications, including an antibiotic. Id.

The record reveals that Watts on several occasions was examined and treated by a podiatrist at Hershey Medical Center. On December 14, 2009, a podiatrist after conducting a clinical

---

13. "The review of systems (or symptoms) is a list of questions, arranged by organ system, designed to uncover dysfunction and disease." A Practical Guide to Clinical Medicine, University of California, School of Medicine, San Diego, http://meded.ucsd.edu/ clinicalmed/ros.htm (Last accessed June 3, 2013).

interview of Watts and performing a physical examination reported as follows:

> ASSESSMENT: Completely healed ulceration under the plantar left second to third metatarsal head. However, the patient did have a skin hematoma[14] present on the lateral aspect of his fifth metatarsal.
>
> PLAN: Today, I debrided the skin hematoma and found a metal fragment, which appeared to be the width and length of a staple . . . There did not appear to be any further fragments present . . . .

Tr. 319.

On January 12, 2010, Dr. Barnoski completed on behalf of Watts a document entitled "Pennsylvania Department of Public Welfare Employability Assessment Form" in which he stated in a conclusory fashion that Watts was temporarily disabled from January 4, 2010, to July 1, 2011. Tr. 224-225. Dr. Barnoski did not specify Watts's work-related functional abilities such as the ability to stand, walk, sit, lift and carry. Id. Also, the Court's review of the record did not reveal treatment notes signed by Dr. Barnoski on or about the date this form was completed.

On January 18, February 22 and April 26, 2010, Watts had appointments with a podiatrist at the Hershey Medical Center and on April 7, 2010, an appointment with a physician's assistant at Pinnacle Health Family Care in Middletown. Tr. 285-287 and 315-

---

14. A hematoma is a localized collection of blood, usually clotted. See Dorland's Illustrated Medical Dictionary, 832 (32nd Ed. 2012).

318. The examinations by the podiatrist revealed healed ulcerations and on April 26th Watts reported that "his primary care physician . . . prescribed Neurontin for him" and since starting that drug he was "not having any symptomatology of neuropathy[.]" Tr. 315. A physical examination performed by the physician assistant on April 7, 2010, only revealed a "tender medial joint line" of the right knee. Tr. 286. However, Watts had full range of motion of the right knee without deformity, swelling, erythema or effusion. Id.

On May 4, 2010, Watts was examined by Jessica Ward, D.O., on behalf of the Bureau of Disability Determination. Tr. 227-235. After conducting a clinical interview and performing a physical examination, Dr. Ward concluded that Watts suffered from poorly controlled diabetes, peripheral neuropathy, carpel tunnel syndrome, depression and poorly controlled high blood pressure. Tr. 231-232. Dr. Ward found that even in light of those conditions Watts could engage in a limited range of sedentary work. Tr. 233-234. Dr. Ward noted that Watts had no limitations with regard to sitting, or pushing and pulling with his hands or feet. Id. Watts could frequently bend and occasionally kneel but never stoop, balance, crouch, or climb. Id. Dr. Ward stated that "[i]t would be advantageous for [Watts] to use a cane when walking distances for balance." Tr. 232. She further noted that Watts was

13

not taking any medications for depression and was only on one medication for high blood pressure. Id.

On May 27, 2010, Mark Hite, Ed.D., a state agency psychologist, reviewed Watts's medical records and concluded that Watts did not suffer from any severe mental impairments. Tr. 236-248. Also, on June 7, 2010, Carla Huitt, M.D., a state agency physician, reviewed Watts's medical records and concluded that Watts suffered from only "minimal physical limitations." Tr. 249.

The medical records through the date of the ALJ's decision do not reveal any statements by a treating or examining physician or psychologist that Watts's impairments met or equaled the criteria of a listed impairment under the regulations of the Social Security Administration. Furthermore, there is no detailed work-related functional assessment from a treating or examining physician other than the one completed by Dr. Ward.[15]

---

15. The record does contain a functional assessment from a treating physician which was completed well after the ALJ issued his decision. Tr. 496-501. That functional assessment is dated June 20, 2011, and was presented to the Appeals Council. Id. A review of that document reveals that the treating physician was of the opinion that Watts could engage in the physical exertional requirements of a limited range of sedentary work and that Watts did not need a cane to ambulate. Tr. 496-497. The physician indicated that Watts could sit for a total of 8 hours without interruption and stand 3 hours. Tr. 497. Watts could frequently reach overhead, handle, finger, feel and occasionally push/pull with his hands. Tr. 498. Watts also could occasionally operate foot controls with his right foot but never with his left. Id. The physician who completed the form did indicate that Watts
(continued...)

**DISCUSSION**

The administrative law judge, at step one of the sequential evaluation process, found that Watts had not engaged in substantial gainful work activity since December 2, 2009, the alleged disability onset date. Tr. 55.

At step two of the sequential evaluation process, the administrative law judge found that Watts had the following severe impairments: "diabetes mellitus, mild peripheral neuropathy, carpal tunnel syndrome, and hypertension[.]" Id. The administrative law judge stated that these impairments "result in more than a minimal restriction of [Watts's] ability to perform basic work-related activities . . . and are, therefore, severe." Id. The administrative law judge found that Watts's depression was a medically determinable impairment but that it was a non-severe impairment. Id.

At step three of the sequential evaluation process the administrative law judge found that Watts's impairments did not individually or in combination meet or equal a listed impairment. Tr. 21-22. In finding that Watts's impairments did not meet the criteria of any listing, the administrative law judge relied on

---

15. (...continued)
could never balance, stoop, kneel, crouch or crawl but could occasionally climb stairs and ramps. Tr. 499. Watts also could not read very small print but could read ordinary newspaper or book print. Tr. 499. Watts also had to avoid hazards such unprotected heights and moving mechanical machinery. Tr. 500.

the opinions of the state agency consultants and the forms completed by them.    Tr. 57.

At step four of the sequential evaluation process, the administrative law judge found that Watts could not perform his past relevant unskilled, light and medium work but that he had the residual functional capacity to perform sedentary work except Watts could not use his hands repetitively or more often than frequently. Id.

In setting this residual functional capacity, the administrative law judge reviewed the medical records and considered several other items including the opinion of Dr. Ward and Watts's activities of daily living. Tr. 58-59.    Also, in arriving at this residual functional capacity the administrative law judge found that Watts's statements about his functional limitations were not credible and gave little weight to the conclusory opinion of Dr. Barnoski. Id.

Based on the above residual functional capacity and the testimony of a vocational expert, the administrative law judge at step five of the sequential evaluation process found that Watts could perform unskilled, sedentary work as a stuffer, semiconductor bonder, carding-machine operator, surveillance system monitor and call out operator, and that there were a significant number of such jobs in the local and national economies. Tr. 61 and 78-79.    The vocational expert prior to

identifying those positions was shown the functional assessment completed by Dr. Ward. Id.

The administrative record in this case is 515 pages in length, primarily consisting of medical and vocational records. The administrative law judge did an excellent job of reviewing Watts's medical history and vocational background in his decision. Tr. 53-61. Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 10, Brief of Defendant.

Watts argues that the administrative law judge erred by (1) failing to find that Watts's impairments met or equaled a listed impairment and (2) finding that Watts could engage in sedentary work. The Court has thoroughly reviewed the record in this case and finds no merit in Watts's arguments.

The purpose of the Listings of Impairments is to describe impairments "severe enough to prevent a person from doing any gainful activity," regardless of age, education or work experience. 20 C.F.R. § 404.1525(a); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The Listings operate as a presumption of disability without further inquiry as to whether the claimant can actually perform prior relevant work or other work available in the local, regional or national economies. Id. To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Watts had the

17

burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. at 531; Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)(stating that it is the claimant's burden to present medical findings that show that his impairment matches or is equal in severity to a listed impairment).

The Social Security regulations require that an applicant for disability insurance benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. § 404.1512(c).

No treating or examining physician has indicated that Watts suffers from physical or mental functional limitations that would preclude him from engaging in the limited range of unskilled, sedentary work set by the administrative law judge in his decision for the requisite statutory 12 month period.[16] No physician indicated that Watts was incapable of engaging in the

---

16. To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

18

limited range of sedentary work set by the ALJ on a full-time basis.  Furthermore, no treating or examining physician stated that Watts's impairments singly or in combination with his other impairments met or equaled the criteria of any listing.  The administrative law judge reviewed the listings and gave an adequate explanation for finding that Watts did not meet or equal the criteria of a listed impairment.

The administrative law judge relied on the opinion of Dr. Ward, a state agency physician who examined Watts.  The administrative law judge's reliance on that opinion was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"); see also Social Security Program Operation Manual System (POMS) Section DI 24515.013, https://secure.ssa.gov/apps10/ poms.nsf/lnx/0424515013 (Last accessed June 4, 2013) ("The signature of a State agency medical . . . consultant on [specified forms] ensures that consideration by a physician . . . has been given to the question of medical equivalence . . . Other documents, including the Psychiatric Review Technique form . . . and various other documents on which medical . . . consultants may record their findings, may also ensure that this opinion has been obtained . . . When an administrative law judge . . . finds that

an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record is satisfied by any of the foregoing documents signed by a State agency medical . . . consultant."). The forms completed by Dr. Ward on May 4, 2010, Dr. Hite on May 27, 2010, and Dr. Huitt on June 7, 2010, are sufficient evidence that Watts failed to meet the requirements of any listed impairment.

The administrative law judge rejected the conclusory opinion of Dr. Barnoski. The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir. 2000). The Court of Appeals stated in relevant part as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

<u>Id.</u> at 317-18 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). In the present case, the administrative law

judge in his decision specifically addressed the opinions of Dr. Barnoski as well as the credibility of Watts.  Tr. 59.

The social security regulations specify that the opinion of a treating physician may be accorded <u>controlling</u> weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  Likewise, an administrative law judge is not obligated to accept the testimony of a claimant if it is not supported by the medical evidence.  An impairment, whether physical or mental, must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements.  20 C.F.R. § 404.1508 (2007).  The administrative law judge appropriately considered the contrary medical opinions of Dr. Ward, Dr. Hite and Dr. Huitt and the objective medical evidence and concluded that the conclusory opinion of Dr. Barnoski was not adequately supported by objective medical evidence consisting of signs, symptoms and laboratory findings.  The administrative law judge in rejecting the opinion of Dr. Barnoski stated in part as follows:

> The claimant's treating physician, John Barnoski, M.D., stated in January 2010 that the claimant's insulin dependent diabetes mellitus temporarily prevented the claimant from performing gainful employment for a period greater than 12 months . . .An opinion as to whether a claimant is capable of sustaining gainful work activity is an issue reserved for the Commissioner

21

and is not entitled to controlling weight or any
special significance. . . However, I considered the
opinion pursuant to Social Security Ruling 96-5p and
and accord[] the opinion little weight. The opinion is
conclusory, providing very little explanation of the
evidence relied upon in forming the opinion, rendering
it less persuasive. Moreover, the opinion is
inconsistent with the claimant's admission that he
can lift 75 pounds and the claimant's failure to
demonstrate any difficulty sitting.

Tr. 59. The administrative law judge gave an adequate explanation

for rejecting the opinions of Dr. Barnoski.

As for Watts's argument that the administrative law

judge did not properly consider his subjective complaints, the

administrative law judge was not required to accept Watts's claims

regarding his physical or mental limitations. See Van Horn v.

Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that

credibility determinations as to a claimant's testimony regarding

the claimant's limitations are for the administrative law judge to

make). It is well-established that "an [administrative law

judge's] findings based on the credibility of the applicant are to

be accorded great weight and deference, particularly since [the

administrative law judge] is charged with the duty of observing a

witness's demeanor . . . ." Walters v. Commissioner of Social

Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v.

Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.

1991)("We defer to the ALJ as trier of fact, the individual

optimally positioned to observe and assess the witness

credibility."). The administrative law judge in addressing Watts's credibility in his decision stated in part as follows:

> I . . . do not find the allegations regarding the intensity, persistence, or limiting effects of the claimant's impairments entirely credible due to inconsistent information regarding daily activities given in the record, the medical reports, and at the hearing by the claimant. At his consultative exam, the claimant alleged difficulty standing for 30 minutes at a time . . . but he admitted earlier that he could walk for two hours without needing to rest . . . the claimant also reported to his physician that he continued to walk four or five miles to work every day and the record demonstrates that the claimant stopped working for reasons other than demonstrating a loss of ability to stand/walk . . . Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant may not be entirely reliable.
>
> The fact that the claimant's employer terminated him for allegedly stealing rather than because of the allegedly disabling impairments provides further evidence against the claimant's allegations . . . .

Tr. 59. Because the administrative law judge observed and heard Watts testify, the administrative law judge is the one best suited to assess his credibility.

The Court is satisfied that the administrative law judge appropriately took into account all of Watts's physical and mental limitations established by the medical records in setting Watts's residual functional capacity. The administrative law judge concluded that Watts could engage in a limited range of sedentary work. That conclusion is supported by the opinion of the state agency psychologist and physicians.

Review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed.

An appropriate order will be entered.

_____
**United States District Judge**

Dated: June 10, 2013